**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **THOMAS W. KELLY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 03:05-0230** |
| | ) | **JUDGE TRAUGER** |
| **INTERNATIONAL CAPITAL** | ) | |
| **RESOURCES, INC. and** | ) | |
| **JOEL AMERLING,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM**

Pending before the court is a Motion to Dismiss or For Judgment on the Pleadings filed by defendant Joel Amerling (Docket No. 8) and a Motion to Dismiss or For Judgment on the Pleadings filed by defendant International Capital Resources, Inc. (Docket No. 10), to which the plaintiff Thomas W. Kelly has responded (Docket No. 14), the defendants have replied (Docket No. 25), and the plaintiff has sur-replied (Docket No. 32). Also before the court is a Motion to Amend the Complaint filed by the plaintiff (Docket No. 26), to which the defendants have responded (Docket No. 33).

For the reasons expressed herein, the plaintiff's Motion to Amend will be granted and the defendants' Motions to Dismiss or For Judgment on the Pleadings will be denied.

## I.    FACTS and PROCEDURAL HISTORY

Defendant International Capital Resources, Inc. ("ICR" or "International"), a Delaware corporation with its principal place of business in New York, is in the business of arranging the financing and refinancing of equipment leases for companies in the transportation industry.

(Docket No. 9, Attach. 1, Aff. of Joel Amerling, ¶ 5)  Plaintiff Thomas W. Kelly, a Tennessee resident, contends that ICR, through its President, Joel Amerling (a New York resident), entered into an oral agreement with Kelly whereby Kelly agreed to seek potential clients for ICR. (Docket No. 1, Exh. 1, Complaint, ¶ 8)  In exchange for Kelly's services, Kelly alleges that ICR agreed to pay him one-half of any commission on fees earned by ICR for any transaction involving a client procured or brought to ICR by Kelly.  (*Id*. ¶ 9)

On March 21, 2005, Kelly filed a Complaint in this court alleging that, after he introduced ICR to Western Express, Inc. ("Western Express"), a Tennessee corporation, and ICR received a commission from Western Express for helping it secure financing, ICR refused to pay Kelly a portion of that commission as promised.  (*Id*. ¶¶ 10–23)  Specifically, the Complaint states that, in the spring of 2004, Kelly approached Paul Wieck, the Vice President of Sales and minority owner of Western Express, and inquired as to whether the company needed any financing assistance.  (*Id*. ¶ 10)  Wieck informed Kelly that Western Express was looking for financing for a new fleet of trucks, and he referred Kelly to Wayne Wise, the President and majority owner of Western Express.  (*Id*. ¶ 11)  After being introduced to Wise and discussing Western Express's specific needs, Kelly and Wise put together a financing packet containing various financial documents regarding Western Express.  (*Id*. ¶ 12)  Thereafter, Kelly provided the financing packet to Amerling of ICR to find a potential lender to finance Western Express's purchase of a new fleet of trucks.  (*Id*. ¶ 13)  ICR then forwarded the packet to G.E. Capital. (*Id*.)  On December 23, 2004, the financing deal between Western Express and G.E. Capital was successfully completed, resulting in $16,000,0000 in financing to Western Express.  (*Id*. ¶¶ 16, 17)

2

According to Kelly, after he introduced Wise to ICR, and prior to Western Express's receipt of financing from G.E. Capital, Western Express and ICR entered into a "Fee Agreement," whereby ICR agreed to assist Western Express with its financial needs in exchange for 2% of the gross amount of financing received by Western Express. (*Id*. ¶ 18) Attached to the Complaint is a copy of the Fee Agreement entered into between Western Express and ICR, which reflects a signature date of February 26, 2004. (*Id*., Exh. 1, "Fee Agreement") According to Wise, he agreed, on behalf of Western Express, to pay a 2% commission fee– which is double the commission that Western Express would normally pay for such financing services– because Joel Amerling "personally told me that International was 'splitting' the sales commission fee with Mr. Kelly." (Docket No. 1, Exh. A, Affidavit of Wayne Wise, ¶¶ 13, 14) In accordance with the Fee Agreement, Western Express paid ICR a 2% commission fee, totaling $320,000, upon completion of the financing deal between Western Express and G.E. Capital. However, rather than paying Kelly one-half of the 2% commission fee ($160,000) per their oral agreement, Kelly contends that ICR, through Amerling, offered to pay Kelly a commission fee of only $10,000.

In his Complaint, Kelly asserts both contract and fraud claims but primarily claims that ICR breached its agreement with him. In addition, or in the alternative, Kelly alleges fraudulent inducement and/or promissory fraud by both ICR and Amerling. According to Kelly, when he brought Western Express to ICR, he relied on the defendants' misrepresentations that they would pay him one-half of the commission ICR received for any business brought by Kelly to ICR. (Docket No. 14 pp. 1–2)

3

## II.    ANALYSIS

ICR and Amerling have filed Motions to Dismiss, pursuant to Fed. R. Civ. Proc. 12(b)(2) and/or 12(b)(6), or For Judgment on the Pleadings, pursuant to Fed. R. Civ. Proc. 12(c). (Docket Nos. 8, 10)   First, the defendants assert that this court lacks personal jurisdiction over the defendants and that this case should therefore be dismissed pursuant to 12(b)(2).[1]   Second, the defendants contend that they are entitled to judgment on the pleadings pursuant to 12(c) with respect to all claims because the allegations supporting the plaintiff's claims are facially inconsistent.   According to the defendants, even assuming an oral agreement existed between Kelly and ICR, the plaintiff did not satisfy the terms of the alleged oral agreement because, according to the facts set out in the Complaint, the Fee Agreement between ICR and Western Express was entered into *before* Kelly allegedly approached Wieck and introduced Western Express to ICR.   The defendants argue that, for this reason, the plaintiff cannot recover under either breach of contract or fraud theories.   Finally, the defendants maintain that the plaintiff's fraud claims should independently be dismissed pursuant to 12(b)(6) because: (1) they are indistinguishable from the plaintiff's breach of contract claim and, under New York law, such "repackaged" claims are not permitted; (2) even if Tennessee law is applied, the claims should be dismissed because plaintiff has not alleged a single fact from which the court could infer that ICR or Amerling entered into the oral contract without the present intent to perform– allegedly a

_____

[1]In support of its Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the defendants submitted an Affidavit of Joel Amerling, in which Amerling denied all jurisdictional facts. The defendants noted that the affidavit was not intended to support the arguments for dismissal based on Rules 12(b)(6) or 12(c).  (Docket No. 8 p. 1, n.1)

requirement of both fraud claims;[2] (3) the plaintiff failed to plead them with the requisite particularity pursuant to Rule 9(b), because the Complaint does not state the time, place, or details of the alleged misrepresentations.

In response to the defendants' motions, the plaintiff admitted that the Complaint "appears to have a temporal inconsistency" and sought to "clarify and correct any temporal inconsistency regarding his introduction of Western Express to IRC *before* they entered into a Fee Agreement" (Docket No. 14 pp. 3, 22) by filing affidavits of the plaintiff and Paul Wieck, as well as a second affidavit of Wayne Wise. While they do not specify an exact date, all three affidavits agree that Kelly introduced Wise and Wieck of Western Express to Amerling and ICR *before* Western Express and ICR entered into a Fee Agreement in February of 2004.[3]

The plaintiff also relies upon facts set forth in his newly filed affidavit, as well as those previously pled in the Complaint, in support of his opposition to the defendants' argument for 12(b)(2) dismissal based on lack of jurisdiction. According to the plaintiff, these facts establish a *prima facie* case of specific jurisdiction over both Amerling and ICR. With respect to the defendant's arguments regarding the fraud-based claims, the plaintiff asserts that Tennessee law governs, and that dismissal on an issue of intent is not proper before a plaintiff may avail himself of pre-trial discovery mechanisms. In the alternative, the plaintiff maintains that issues of

---

[2]Amerling further contends that, because he was not a party to the oral agreement and, therefore, had no obligation to personally perform under the agreement, he could not, as a matter of law, have had a present intent not to perform at the time the contract was entered into.

[3]The plaintiff also points out that the original affidavit of Wayne Wise, while stating that Kelly approached Wieck "[i]n or around April or May 2004," also supports the allegation that Kelly introduced ICR and Amerling to Wise and Western Express before Western Express and ICR entered into their Fee Agreement. (Aff. Wayne Wise ¶¶ 6–7, 12)

5

material fact exist as to the issue of intent. Finally, the plaintiff contends that the fraud claims were pled with sufficient particularity so as to place the defendants on notice.

Based upon a statement in the plaintiff's newly-filed affidavit that the alleged oral agreement was "of a continuing nature" without "any date of termination," the defendants, in their reply brief, presented an additional argument that, under New York law, the plaintiff's breach of contract claim is barred by the statute of frauds. (Docket No. 25) The plaintiff sur-replied on May 18, 2004, asserting that this new argument is of no avail because Tennessee law applies. (Docket No. 32)

Also on May 18, 2004, the plaintiff filed a Motion to Amend the Complaint in order to correct the temporal inconsistency and to clarify that ICR did not enter into the Fee Agreement with Western Express until after the plaintiff introduced ICR and Amerling to Western Express, contrary to the defendants' allegations in their motions to dismiss. (Docket No. 26 ¶ 2) In addition, in response to the defendants' Rule 9(b) argument for dismissal of plaintiff's fraud claims for failure to plead with sufficient particularity, the plaintiff seeks leave to amend the Complaint to add all related facts currently within his knowledge, without the benefit of discovery. (*Id.* ¶ 3)


### A.     15(a) Motion to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court stated:

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. If the underlying facts or circumstances

Case 3:05-cv-00230   Document 36   Filed 11/09/05   Page 6 of 32 PageID #: 7

relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Id.* at 182 (internal citations omitted). Thus, leave should be given unless there is a showing of undue delay, bad faith or dilatory motive on the part of the moving party, undue prejudice to the non-moving party, or futility of the proposed amendment. *Id.*; *see also Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). The Sixth Circuit has found that "[t]he thrust of Rule 15 is... that cases should be tried on their merits rather than the technicalities of pleading." *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 425 (6th Cir. 1999) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)).

Here, the plaintiff requests leave to amend in order to "clarify a temporal inconsistency in the original complaint" and make clear his allegation "that International did not enter into the Fee Agreement until after Plaintiff introduced International and Amerling to Western Express," contrary to factual statements in the defendants' motions to dismiss. (Docket No. 26 ¶ 2) Paragraphs 10 and 11 of the original Complaint state that: "In the spring of 2004, Mr. Kelly approached Paul Wieck...[and] Mr. Wieck informed Mr. Kelly that Western Express was looking for financing for a new fleet of trucks and referred Mr. Kelly to Wayne Wise, the President and majority owner of Western Express." Paragraph 18 of the original Complaint states that: "After International was introduced to Mr. Wise through Mr. Kelly, and prior to Western Express's

7

receiving this financing from G.E. Capital, Western Express and International entered into a "Fee Agreement." The Fee Agreement, which was attached to the Complaint by the plaintiff, reflects a signature date (February 26, 2004) that precedes the "spring of 2004," the time-frame in which the plaintiff first allegedly approached Wieck to solicit Western Express's business. Paragraph 18 likewise conflicts with the affidavit of Wayne Wise, also attached to the original Complaint, which states that Kelly first approached Wieck "[i]n or around April or May 2004." (Docket No. 1, Exh. A ¶ 4)

To clarify this temporal inconsistency, the plaintiff has submitted his own affidavit, which states that he first approached Wieck "in or around late 2003 or early 2004" (Docket No. 20 ¶ 9), that of Wieck (Docket No. 18), and a second affidavit of Wayne Wise (Docket No. 16). In Wise's second affidavit, Wise avers that, in his first affidavit, he "mistakenly stated" that Kelly first approached Wieck in or around April or May 2004 and reaffirms the statement in his first affidavit that Kelly introduced him to Amerling and ICR prior to the signing of the Fee Agreement. (Docket No. 16 ¶¶ 2, 4) Likewise, Wieck states in his affidavit that, although he cannot recall the exact date, Kelly first approached him and inquired about whether Western Express required any financial assistance *prior to* Kelly's introducing him to Amerling and *prior to* the signing of the Fee Agreement between ICR and Western Express. (Docket No. 18 ¶ 4) While they do not establish the exact date on which Kelly first approached Wieck, all three affidavits agree that Kelly introduced Wise and Wieck of Western Express to Amerling and ICR *before* Western Express and ICR entered into a Fee Agreement in February of 2004.

The defendant objects to the plaintiff's Motion to Amend, contending that Rule 15(a) does not "exist to aid in changing one's story to avoid dismissal, especially when the affidavits

upon which the amendments ... are based flatly contradict the allegations in plaintiff's original complaint." (Docket No. 33 p. 2) However, contrary to the defendant's assertion, the plaintiff's story has always been that he approached Wieck and Wise of Western Express and introduced them to Amerling and ICR prior to the time that Western Express and ICR entered into the Fee Agreement.[4] In fact, the whole basis of the plaintiff's cause of action is that Western Express was a client that Kelly brought to ICR and, for that reason, Kelly is owed a percentage of the commission that ICR subsequently received from Western Express. In the court's view, that the Complaint, as a result of sloppy or inartful pleading, contained an internal inconsistency based on the date of the Fee Agreement (which the plaintiff himself attached to the Complaint) is not a sufficient basis upon which to deny the motion to amend.

The defendants have not provided any basis for finding bad faith on the part of the plaintiff or that prejudice would ensue if the court grants the Amendment.[5] To try the case, as the defendants would have the court do, based upon the technicalities of the pleadings would conflict with both the letter and the spirit of Federal Rule 15(a). *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 425 (6th Cir. 1999). Justice requires that the plaintiff be permitted to amend the Complaint in the manner requested,[6] and his motion to do so will be granted.

---

[4]In point of fact, the original affidavit of Wayne Wise, while stating that Kelly approached Wieck "[i]n or around April or May 2004," also supports the allegation that Kelly introduced ICR and Amerling to Wise and Western Express before Western Express and ICR entered into their Fee Agreement. (Wise Aff. ¶¶ 6–7, 12) Thus, contrary to defendant's assertions, the newly filed affidavit is not entirely inconsistent with the prior sworn testimony.

[5]Defendants have not taken any form of discovery in this case and, thus, will not suffer any prejudice from the amending of the Complaint.

[6]In response to the defendants' Rule 9(b) argument for dismissal of plaintiff's fraud claims for failure to plead with sufficient particularity the time or place of the misrepresentations allegedly made by Amerling to Kelly, the plaintiff, in his Motion to Amend, also requests the

**B.     12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction**

**1. *Standard***

In this Circuit, there is a well-defined procedural design aimed at guiding district courts in their disposal of Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction. *Dean v. Motel 6 Operating, L.P.*, 134 F.3d 1269, 1271–72 (6th Cir. 1998); *Theunissen v. Matthews*, 935 F.2d 1454, 1548 (6th Cir. 1991). To begin, the plaintiff has the burden of establishing the existence of jurisdiction on a 12(b)(2) motion. *Theunissen*, 935 F.2d at 1458. In so doing, the plaintiff may not simply rely on the allegations set forth in the complaint but must, by affidavit or otherwise, set forth specific facts showing the existence of jurisdiction. *Id.* Once the court is faced with a properly supported 12(b)(2) motion and opposition, it has three procedural alternatives: "it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Id* (citing *Serras v. First Tennessee Bank Nat. Ass'n*., 875 F.2d 1212, 1214 (6th Cir. 1989)).

The alternative selected will influence the burden of proof necessary for the plaintiff to

─────────────────────

addition of all related facts currently within the plaintiff's knowledge, without the benefit of discovery. (Docket No. 26 ¶ 3) Specifically, the proposed Amended Complaint states the additional facts that: (1) "After September 18, 2003, but before February 26, 2004, International, through Amerling, intentionally misrepresented to Mr. Kelly via telephone that International would pay him one-half of any commission on fees earned by International for any transaction involving a client procured or brought to International by Mr. Kelly;" (2) "Mr. Amerling sent to Mr. Kelly in Tennessee business cards with International's logo, International's contact information, and Mr. Kelly's name and Tennessee contact information printed on the cards;" and (3) "International and Amerling also represented to third parties that the Agreement existed." (Docket No. 26, Exh. A., First Amended Complaint ¶¶ 40, 41, 43) Because the defendant does not object to the amendments setting forth more particularized allegations with respect to plaintiff's fraud claims, nor would they suffer prejudice as a result, the Motion to Amend will be granted in this respect as well.

defeat the motion. *Id.* If the court chooses to rule on the 12(b)(2) motion without conducting an evidentiary hearing, then the plaintiff need only make out a prima facie case for jurisdiction. *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). In such an instance, not only will the pleadings and affidavits be considered in the light most favorable to the plaintiff, but the court will not consider or weigh the controverting assertions of the defendant.[7] *Id.* "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff [] alleges collectively fail to state a prima facie case for jurisdiction." *Id.*

On the other hand, if the court chooses to exercise its discretion and orders an evidentiary hearing to resolve disputed issues of fact or make determinations as to credibility, then the plaintiff must establish personal jurisdiction by a preponderance of the evidence. *Dean*, 134 F.3d at 1272 (quoting *Serras*, 875 F.2d at 1214). The same standard will apply if the matter is either reserved for decision at trial or if there is no reason to conduct an evidentiary hearing on the issue, such as where there is no real dispute as to the facts. *Id.*

Here, the parties' submissions raise issues of disputed facts regarding the question of personal jurisdiction.[8] Neither party, however, has requested discovery or an evidentiary hearing

---

[7]This latter rule was adopted to prevent non-resident defendants "from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts...." *Theunissen*, 935 F.2d at 1459.

[8]In addition to the affidavits submitted, the parties' statements of undisputed facts and responses thereto clearly reveal that there are significant disputed facts concerning the existence of personal jurisdiction. These statements of facts were submitted in response to an Order dated April 20, 2005 (Docket No. 21), which stated that, pursuant to Rule 12(b), the motions to dismiss would be treated as motions for summary judgment because matters outside the pleadings had been submitted for the court's consideration. Although the parties' statements of undisputed fact are in large part related to the dispute over personal jurisdiction, the rule articulated in 12(b)– that a motion to dismiss will be treated as a motion for summary judgment if matters outside the pleading are presented to the court– extends only to motions to dismiss brought pursuant to

11

to resolve these disputed facts. The 12(b)(2) motion, therefore, will be decided on the submissions alone, and the court will determine whether Kelly has sufficiently established a *prima facie* case of jurisdiction, viewing the evidence in the light most favorable to Kelly and ignoring all controverted evidence submitted by the defendants.

**2. *Merits***

A federal court may only exercise personal jurisdiction in a diversity case if such jurisdiction is authorized by the law of the state in which the court sits and is otherwise consistent with the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002). "Where the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates due process." *Bridgeport Music, Inc. v, Still N the Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003 (citing *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co, Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996); *see also Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998). The Tennessee long-arm statute has been interpreted to extend to the limits of due process.[9] *See Bridgeport Music*, 327 F.3d at 477; *see*

_____

12(b)(6), and does not include motions to dismiss for lack of jurisdiction under 12(b)(2). The court improvidently issued this Order. The factual exchanges made pursuant to it are, for the most part, cumulative to the affidavits. Although they have some pertinence to the statute of frauds motion, discussed later herein, which is treated as a summary judgment motion, they are not pertinent to this jurisdictional motion made under Rule 12(b)(2).

[9]Tennessee's long-arm statute, as codified at Tenn. Code Ann. § 20-2-214, provides, in relevant part:
>    (a) Persons who are nonresidents of Tennessee and residents of Tennessee who
>    are outside the state and cannot be personally served with process within the state
>    are subject to the jurisdiction of the courts of this state as to any action or claim

12

*also Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001); *Masada Inv. Corp. v. Allen*, 627 S.W.2d 332, 334 (Tenn. 1985). Therefore, the court need only address whether exercising personal jurisdiction over the defendants is consistent with federal due process requirements.

The underlying principle of the due process analysis in the context of personal jurisdiction is that, when a defendant is not physically present in the forum, he must have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Youn*, 324 F.3d at 417 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also Neogen*, 282 F.3d at 889. The Supreme Court distinguishes between "general" jurisdiction and "specific" jurisdiction, either of which can be a basis for personal jurisdiction. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *see also Youn*, 324 F.3d at 417; *Bridgeport Music*, 327 F.3d at

---

for relief arising from:
(1) The transaction of any business within the state;
(2) Any tortious act or omission within this state;
(3) The ownership or possession of any interest in property located within this state;
(4) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk, located within this state at the time of contracting;
(5) Entering into a contract for services to be rendered or for materials to be furnished in this state;
(6) Any basis not inconsistent with the constitution of this state or of the United States;
(7) Any action of divorce, annulment or separate maintenance where the parties lived in the marital relationship within this state, notwithstanding one party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support, or marital dissolution agreement, if the other party to the marital relationship continues to reside in this state.

Tenn. § 20-2-214(a) (2004). In 1997, the General Assembly codified additional provisions to the long-arm statute, including a provision conveying personal jurisdiction based on conduct, Tenn. Code. Ann. § 20-2-223. *See Chenault v. Walker*, 36 S.W.3d 45, 51 (Tenn. 2001).

13

477. General jurisdiction is present when a defendant's contacts with the forum state are "substantial" and "continuous and systematic," such that a state may exercise personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum. *See Youn*, 324 F.3d at 418. Specific jurisdiction is when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Youn* (quoting *Helicopteros*, 466 U.S. at 414 n.8). Here, the plaintiff contends that specific, rather than general, jurisdiction exists over the defendants.

In *Southern Machine Co. v. Mohasco Industries, Inc*., the Sixth Circuit established a three-part test for determining whether a court could exercise specific jurisdiction consistent with federal due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequence caused by the defendant must have had a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d 374, 381 (6th Cir. 1968), *quoted in Bridgeport Music*, 327 F.3d at 477–78; *see also Youn*, 324 F.3d at 418. The court now applies these criteria to the instant case.

(a) <u>Purposeful Availment</u>

With respect to the first *Mohasco* prong, Sixth Circuit case law requires that the defendant "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Dean*, 134 F.3d at 1273 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S 462, 475 (1985)). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third

14

person." *Id*. Purposeful availment is "something akin to a deliberate undertaking to do or cause an act or thing to be done [in the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of the [forum state's] opportunities." *Bridgeport Music*, 327 F.3d at 478 (quoting *Neogen*, 282 F.3d at 891) (alteration in original). The purposeful availment prong is satisfied "when the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum State, and when the defendant's conduct and connection with the forum are such that 'he should reasonably anticipate being haled into court there.'" *Bridgeport Music*, 327 F.3d at 478 (quoting *Compuserve*, 89 F.3d at 1263) (internal quotation marks omitted).

The actions of the defendants, as set forth in the affidavits submitted by plaintiff and in the pleadings, make a case for purposeful availment under this standard. According to the plaintiff, defendant Amerling, on behalf of ICR, contacted Kelly, a Tennessee resident, in Tennessee and encouraged him to get a specific license so that Kelly could work as an agent of ICR in Tennessee. Once Kelly obtained the license, per defendants' request, the defendants again called Kelly in Tennessee and offered to pay him one-half of any commission fee earned from clients procured by Kelly (presumably in Tennessee, where Kelly resided). After Kelly agreed to the arrangement, while on the telephone in Tennessee, it is undisputed that defendants sent to Kelly in Tennessee business cards with ICR's logo and contact information in New York, as well as Kelly's name and contact information in Tennessee. In addition, Amerling, on behalf of ICR, traveled to Tennessee on two occasions, meeting with the plaintiff both times, once in connection with a deal involving another Tennessee corporation that, at the time of Amerling's

15

visit, employed the plaintiff, and once in connection with the Western Express deal. According to the plaintiff, during the Western Express meeting, Amerling and Kelly discussed the ongoing progress of the Western Express deal and Kelly's contacts on behalf of ICR with the president of Western Express, Wayne Wise. Subsequently, ICR obtained a significant commission from Western Express, allegedly as a result of plaintiff's activities in Tennessee in connection with the agreement and/or in reliance upon defendants' fraudulent misrepresentations.

Under these facts, the court finds that the defendants have purposefully availed themselves of the privilege of conducting activities within the state of Tennessee and that their relationship with Tennessee is not, contrary to the defendants' assertions, based on the unilateral actions of the plaintiff.[10] Rather, defendants, through its communications with plaintiff, intentionally and freely established its intention to continually solicit business from the Tennessee transportation company market (the foreseeable consequences of which have a direct impact on the commerce of Tennessee) and created a continuing obligation in Tennessee by agreeing to pay plaintiff, a Tennessee resident, one-half of any commission received by clients

---

[10]The defendants, relying on statements in Amerling's affidavit, contend that plaintiff's unilateral calls to Amerling in New York are not sufficient to establish purposeful availment. Yet, the defendant ignores the evidence submitted by the plaintiff, via his own affidavit, that Amerling initiated the phone calls, not the plaintiff, and the fact that, under the applicable personal jurisdiction standard of review, the court is not permitted to weigh the defendant's contrary assertions. Moreover, even if the plaintiff did solicit the agreement from Amerling, that fact is immaterial, where Amerling and ICR purposefully chose to deal with the plaintiff. *See Southern Machine*, 401 F.2d at 382 ("the contention that [plaintiff] solicited the license agreement from [defendant] is immaterial... [defendant] chose to deal with [plaintiff]....). In addition, this is not a case where the use of interstate facilities, such as the telephone and mail, was the only evidence submitted to establish minimum contacts. *See, e.g., Lak, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1301 (6th Cir. 1989). Finally, the fact that the agreement itself arose from a single phone call is irrelevant, as the number of calls has no "talismanic significance" in a purposeful availment inquiry, which instead hinges on the *quality* of the contacts. *Id*.

brought to ICR by Kelly through his work in Tennessee.

(b) Cause of Action Arising from the Contacts

The second *Mohasco* factor asks whether the plaintiff's claims "arise from" the defendants' contacts with Tennessee. The Sixth Circuit has observed that, "[i]f a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Compuserve*, 89 F.3d at 1267; *see also Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002). "Although this does not require that the cause of action arise formally and directly from defendant's contacts with the forum, the cause of action must still 'have a substantial connection with the defendant's in-state activities.'" *Dean*, 134 F.3d at 1275 (quoting *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989), *cert. denied*, 493 U.S. 1058 (1990)). "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." *Mohasco*, 401 F.2d at 384 n.29.

When the cause of action is for breach of a contract entered into by the defendant with a forum state resident, the second prong of the *Mohasco* test is easily met. *See Cole v. Miletti*, 133 F.3d 433, 436 (6th Cir. 1998) ("if the cause of action is for breach of that contract, as it is here, then the cause of action naturally arises from the defendant's activities in [the forum state]."); *In-Flight Devices*, 466 F.2d 220, 229 (6th Cir. 1972) ("Defendant's transaction of business in [the forum state]– its entering of a contractual relationship with a [forum state] corporation– is necessarily the very soil from which the action for breach grew."). Thus, with respect to the breach of contract claim asserted against ICR, the second *Mohasco* factor is satisfied.

Regarding the plaintiff's remaining fraud-based claims, defendants maintain, in reliance

17

upon *Lak Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1301 (6th Cir. 1989), that, where a case involves misrepresentations by a non-resident defendant, the Sixth Circuit holds the plaintiff to a higher standard with respect to the second *Mohasco* prong– requiring the plaintiff to affirmatively show that the fraudulent misrepresentations were actually made in the forum state. (Docket No. 9 p. 11)  Because, according to the defendant, none of the alleged misrepresentations took place in Tennessee, the plaintiff has failed to demonstrate that the fraud claims arose from Amerling's contacts in Tennessee.  However, in *Lak*, the Sixth Circuit expressly held that, if the contract at issue had "borne a more substantial relationship" to the forum state, it would not have been necessary for the representations it embodied actually to have been made to the plaintiff in the forum state.  *Id*. at 1303.   According to the Court's reasoning in *Lak*, the heightened standard cited by the defendant applies only where the contacts with the forum state are significantly attenuated.  *See Lak*, 885 F.2d at 1303 ("Where the defendant's contacts with the forum state are as attenuated as they are here, however, we think it is incumbent on the plaintiff to show affirmatively that the fraudulent misrepresentations were actually made in the forum state.")

Here, plaintiff has sufficiently established that his fraud-based claims "arose out of" the defendants' activities in Tennessee, since the operative facts of the alleged fraud are related to the defendants' in-state activities.  Plaintiff's affidavits and pleadings allege that Amerling contacted Kelly in Tennessee and falsely represented that ICR would pay Kelly for services to be rendered in Tennessee.  Thereafter, defendants sent Kelly business cards in Tennessee and met with Kelly in Tennessee, further inducing reliance upon these allegedly false representations.  Because the defendants' contacts with the forum state are not insubstantial, Kelly need not show

18

that the actual misrepresentations themselves were made in Tennessee. In the court's view, the plaintiff has amply shown that the fraud at issue in the instant case "arose out of" the defendants' activities in Tennessee.

(c) <u>Reasonableness of Exercise of Jurisdiction</u>

In analyzing the third *Mohasco* requirement– which asks whether the acts of the defendant or consequences caused by the defendant have a substantial connection with the forum state so as to make the exercise of jurisdiction over the defendant reasonable– courts are directed to consider several factors, including "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Compuserve*, 89 F.3d at 1268; *see also Youn,* 324 F.3d at 419*; Bird*, 289 F.3d at 875. If the first two *Mohasco* requirements are met, an inference arises that the third factor is also satisfied. *See Bird*, 289 F.3d at 875; *Mohasco*, 401 F.2d at 384. Conversely, the Sixth Circuit in *Dean* observed that it would not pursue the "complex inquiry" posed by the third requirement where the "lack of purposeful availment is dispositive." *Dean*, 134 F.3d at 1275. Because the first two *Mohasco* elements have been established, and because and none of the factors the court is directed to consider weigh against the resulting presumption that the exercise of jurisdiction is reasonable in this case, the court finds that the third *Mohasco* factor has been fulfilled.

In conclusion, the plaintiff's pleadings and affidavits are more than sufficient to make a *prima facie* showing of facts supporting the exercise of in personam jurisdiction. The defendants' 12(b)(2) motion to dismiss, therefore, will be denied.

19

**C.     12(b)(6) Motion to Dismiss and 12(c) Motion For Judgment on the Pleadings**

The defendants next assert that they are entitled to judgment on the pleadings with respect to all claims because the allegations supporting the claims are facially inconsistent with plaintiff's theories of recovery.  According to the defendants, even assuming an oral agreement existed, the plaintiff did not satisfy the terms of the alleged oral agreement because, according to the facts alleged in the original Complaint, the Fee Agreement between ICR and Western Express was entered into *before* Kelly allegedly approached Wieck and introduced Western Express to ICR.  The defendants argue therefore that the plaintiff cannot recover under either breach of contract or fraud theories, because the plaintiff did not perform under the alleged contract and because the fraud claims are dependent upon an alleged misrepresentation by Amerling that ICR intended to perform under the oral contract.  However, because the plaintiff's Motion to Amend the Complaint will be granted, *see infra* Section II.A, and because the Amended Complaint will cure the inconsistency cited by the defendants as the basis for their 12(c) motion, the defendants' argument for judgment on this basis is moot, and the court need not address it.

In the alternative, the defendants maintain that the plaintiff's breach of contract claim asserted against ICR is barred by the statute of frauds and that the plaintiff's claims for promissory fraud and fraudulent inducement should be dismissed pursuant to 12(b)(6) for failure to state a claim upon which relief can be granted.  According to the defendants, the fraud claims should be dismissed because:  (1) they are indistinguishable from the plaintiff's breach of contract claim and, under New York law, such "repackaged" claims are not permitted; (2) even if Tennessee law is applied, the claims should be dismissed because plaintiff has not alleged a

20

single fact from which the court could infer that ICR or Amerling entered into the oral contract without the present intent to perform;[11] and (3) the plaintiff failed to plead them with the requisite particularity pursuant to Rule 9(b), because the plaintiff failed to allege either the time, place, or details of the alleged misrepresentations. While the last of these arguments has been rendered moot by virtue of the Amended Complaint, the court will address the remaining arguments below.

### 1. *Breach of Contract Claim*

In its reply, defendant ICR argues, for the first time, that the plaintiff's breach of contract claim is barred by the New York Statute of Frauds because, based on statements made in the plaintiff's affidavit accompanying his response to the defendants' motions to dismiss, the alleged oral agreement was a commission agreement of a continuing nature without any date of termination. (Docket No. 25 p. 4) The plaintiff counters that Tennessee law, rather than New York law, applies and that, under the Tennessee Statute of Frauds, the type of oral contract alleged by the plaintiff need not be in writing. (Docket No. 32)

To resolve the question of which state's law governs a contract in a diversity case in federal court, the court looks to the conflict of law rules of the forum state. *Johnson v. Ventra Group, Inc*., 191 F.3d 732, 738 (6th Cir. 1999). The parties correctly point out that, under Tennessee conflict of law rules, the validity of a contract is governed by the law of the place

---

[11]Amerling further contends that, because he was not a party to the oral agreement and, therefore, had no obligation to personally perform under the agreement, he could not, as a matter of law, have had a present intent not to perform at the time the contract was entered into.

where the contract was entered into.[12]  *Vencor, Inc. v. Standard Life & Accident Insur. Co.*, 317

F.3d 629 (6th Cir. 2003); *Solomon v. FloWarr Mgmt., Inc.*, 777 S.W.2d 701, 704–05 (Tenn. Ct.

App. 1989); *Mackey v. Judy's Foods, Inc.*, 867 F.2d 325, 328 (6th Cir. 1989).

The defendants assert that the alleged oral agreement would only have been

consummated upon acceptance by Amerling in New York because, as stated in his affidavit,

Amerling has "never contacted Mr. Kelly in any form or fashion for the purpose of entering into

any sort of oral agreement with him."  (Docket No. 13, Amerling Aff. ¶ 14)  The defendant also

points out that, while plaintiff argues in his memorandum that Kelly accepted the offer in

Tennessee, Kelly's actual affidavit does not reveal which party offered and which party accepted

the oral agreement.  (Docket No. 25 p. 5)  Thus, according to the defendants, the only evidence

before the court establishes that the agreement was entered into in New York and, as a result,

New York law governs. It therefore follows that the agreement alleged by the plaintiff is barred

under the New York Statute of Frauds, which, according to the defendants, demands oral service

contracts for the payment of commissions to be in writing where they are of an indefinite

duration.

In response, the plaintiff filed a second affidavit setting forth the circumstances under

which the plaintiff contends the oral contract at issue was formed:

> After I received the insurance license, Mr. Amerling and I exchanged several
> phone calls and continued discussions regarding our working together in the
> insurance and finance brokering industry.  After several discussions, Mr.
> Amerling called me in Tennessee and offered for International Capital Resources,
> Inc. ("International"), to pay me one-half of any commission on fees earned by
> International for any transaction involving a client procured or brought to

---

[12]One exception to this general rule is that, in certain situations, the law of the place of
performance may apply instead.  *Solomon*, 777 S.W.2d at 705 n.5.

International by me.  During this telephone call, I accepted his offer.
(Docket No. 30, Second Aff. of Thomas Kelly ¶ 8)  Thus, according to the plaintiff, the
substantive law of Tennessee applies and, since Tennessee law, unlike New York law, does not
require commission contracts to be in writing, as long as the contract can possibly be performed
within one year, his breach of contract claim is not barred by the statute of frauds.

Because matters outside of the pleadings have been presented to the court with respect to
the defendant's statute of frauds argument, and the parties have been given a reasonable
opportunity to submit evidence (in part, because of the court's improvidently issued Order),
ICR's motion to dismiss, or for judgment on the pleadings, on the statute of frauds grounds will
be analyzed under the summary judgment standard of review set forth in Federal Rule of Civil
Procedure 56(c). Fed. R. Civ. Proc. 12(b), 12(c); *see also Barrett v. Harrington*, 130 F.3d 246,
253 (6th Cir. 1997).  Rule 56(c) provides that summary judgment shall be granted if "the
pleadings, depositions, answers to interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any material fact and that the moving
party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To prevail, the moving
party must meet the burden of proving the absence of a genuine issue of material fact as to an
essential element of the opposing party's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323
(1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).  In determining whether the
moving party has met its burden, the court must view the factual evidence and draw all
reasonable inferences in the light most favorable to the nonmoving  party.  *See Matsushita
Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario,
Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  "The court's function is not to weigh the evidence and

determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

Taking the facts in the light most favorable to Kelly, the court credits the allegation that Kelly accepted the offer by telephone in Tennessee and will, therefore, apply Tennessee law. *See Matthews v. St. Paul Property and Liability Ins*., 845 S.W.2d 737, 739 (Tenn. 1992) (quoting *Tolley v. General Accident, Fire & Life Ins. Corp*. 584 S.W.2d 647, 649 (Tenn. 1979) ("Where an acceptance of an offer is given by telephone, it is generally held that the place of contracting is where the *acceptor* speaks his acceptance.").

The Tennessee Statute of Frauds provides, in relevant part:

No action shall be brought: ...

(5)  Upon any agreement or contract which is not to be performed within the space of one (1) year from the making of the agreement or contract;

unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.

Tenn. Code. Ann. § 29-2-101(a)(5).  In *Birdwell v. Psimer*, 151 S.W.3d 916, 919 (Tenn. Ct. App. 2004), the Court of Appeals of Tennessee reiterated the lenient standard by which the one-year time requirement must be measured:

As we have explained... "[t]he question is not what the probable, expected, or actual performance of the contract may be, but whether, according to the reasonable interpretation of its terms, it requires that it should not be performed within the year.  Unless the court, looking at the contract in view of the surroundings, can say that in no reasonable probability can such agreement be performed within the year, it is its duty to uphold the contract." [*Boutwell v. Lewis Bros. Lumber Co*., 182 S.W.2d 1 (Tenn. Ct. App. 1944) (quoting 37 C.J.S., Frauds, Statute of, § 53) ]  Thus, there must be evidence to demonstrate that the

> parties specifically agreed that the contract absolutely would not be performed within one year for it to run afoul of the statute of frauds. *Johnson v. Cincinnati N.O. & T.P. Ry.*, 240 S.W. 429 (1922). It is not sufficient to show that it is not reasonably possible to perform the contract within a year, or that such would probably not be done, or that a certain contingency which would bring it within the year time period did not occur. *Id.*, *see also Davidson v. Holtzman*, 47 S.W.3d 445 (Tenn. Ct. App. 2000); *Price v. Mercury Supply Co., Inc.*, 682 S.W.2d 924 (Tenn. Ct. App. 1984).

*Birdwell*, 151 S.W.3d at 919.

In this case, there is no evidence that the parties specifically agreed that the oral agreement would not be performed within one year. Viewing the facts in the light most favorable to the plaintiff, the defendant simply offered to pay plaintiff one-half of any commission received from a client procured or brought to ICR by the plaintiff. There is nothing in the inherent nature of the contract or in the words or actions of the parties that suggests that the contract should or could not be performed within the year. Indeed, under the facts of this case as set forth by the plaintiff, the plaintiff brought Western Express to ICR as a client within a year after the contract was formed, and the defendant, in turn, received a commission from Western Express within that same year. While defendants have not yet paid plaintiff for his role, they could have done so at any time within the year. Based upon the terms alleged by the plaintiff, the parties clearly contemplated a type of contract that could be performed within one year, and, as a result, the contract does not fail because of the Tennessee Statute of Frauds.

### 3. *Fraud Claims*

In addition to his breach of contract claim, plaintiff asserts actions for promissory fraud and fraudulent inducement to contract, alleging that ICR and Amerling intentionally misrepresented to plaintiff that ICR would pay him one-half of any commission on fees earned by ICR for any transaction involving a client procured or brought to ICR by plaintiff, and that

25

plaintiff reasonably relied on that representation by bringing a financing client, Western Express, to ICR. In asserting his promissory fraud claim, plaintiff alleges that ICR and Amerling had no intention of splitting the commissions with him at the time the representations and agreement were made. In asserting his fraudulent inducement to contract claim, plaintiff alleges that the misrepresentation was a false statement concerning a fact material to the parties' agreement and that ICR and Amerling had either knowledge of the falsity of their statements or an utter disregard for the truth of the agreed-upon commission fee structure.

Tennessee has adopted the Restatement (Second) of Conflict of Laws "most significant relationship" approach for choice of law decisions involving tort claims. Under this approach, a court is to apply the "law of the state where the injury occurred ... unless, with respect to the particular issue, some other state has a more significant relationship ... to the occurrence and the parties." *Hataway v. McKinley*, 830 S.W.2d 53, 57 (Tenn. 1992) (quoting RESTATEMENT (SECOND) OF CONFLICTS OF LAWS, §§ 146, 175 (1971)). Defendants assert that, despite plaintiff's argument that the alleged injury occurred in Tennessee, New York has a more significant relationship to the litigation.

The following factors are to be weighed in determining the state with the "most significant relationship" to the claim:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties,

(d) the place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 145 (1971). These "contacts are to

26

be evaluated according to their relative importance with respect to the particular issue."

*Hataway*, 830 S.W.2d at 59.

In addition to the four tort factors discussed above, there are additional factors to be considered for claims of fraud and misrepresentation. Restatement (Second) of Conflicts of Laws § 148(2) sets forth the following relevant factors to be considered "[w]hen the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made . . . .":

(a) where the plaintiff acted in reliance,

(b) where the representations were received,

(c) where the representations were made,

(d) where the parties resided or were incorporated,

. . .

(f) where performance was to be rendered under a contract the plaintiff was induced to enter.

RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 148(2).

The general tort factors weigh in favor of Tennessee, as do the additional fraud and misrepresentation factors. First, the alleged injury occurred in Tennessee because plaintiff resided in Tennessee, and he is the one who is alleged to have been injured by the defendants' misrepresentations. *See Blane v. American Investors Corp*., 934 F. Supp. 903, 909 (M.D. Tenn. 1996) (finding that the injury occurred in Tennessee because the plaintiff resided in Tennessee and he was the one allegedly injured by the defendant's allegedly tortious conduct). Also, "[w]hen a person sustains a loss by fraud, the place of wrong is where the loss is sustained not where the fraudulent representations are made." *Bailey v. Chattem, Inc.*, 684 F.2d 386, 392 (6th

27

Cir. 1982) (quoting RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 377 n.4 (1934)). The conduct causing the injury occurred in New York, because the representations were made by Amerling over the phone from ICR's corporate offices in New York and because the ICR business cards containing the plaintiff's name and contact information were sent from New York. However, the plaintiff received the representations and the business cards in Tennessee and acted in reliance upon them in Tennessee by soliciting the business of Western Express, a Tennessee corporation. Furthermore, though both general tort factor (c) and fraud factor (c) point to New York, Delaware, *and* Tennessee because defendant is a Delaware corporation with its principal places of business in New York and plaintiff is a Tennessee resident, the relationship between the parties was centered in Tennessee, where Amerling visited Kelly and discussed the Western Express deal and where Kelly was to solicit business on behalf of ICR. Under these same facts, the final tort factor– where performance was to be rendered under a contract the plaintiff was induced to enter– points to Tennessee. Balancing all of these factors, the court finds that Tennessee has the "most significant relationship" to these tort claims. Thus, Tennessee law, rather than New York law, applies in determining whether plaintiff has stated his fraud claims as a matter of law. As a result, defendants' arguments for dismissal of plaintiff's fraud claims based on New York law must fail.

Under Tennessee law, the elements of an action for fraud are:

(1) an intentional misrepresentation with regard to a material fact,

(2) knowledge of the misrepresentation's falsity– that the representation was made knowingly or without belief in its truth, or recklessly without regard to its truth or falsity;

(3) that the plaintiff reasonably relied on the misrepresentation and suffered damage; and

28

(4) that the misrepresentation relates to an existing or past fact, or if the claim is based on promissory fraud, then the misrepresentation must embody a promise of future action without the present intention to carry out the promise.

*Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566–67 (6th Cir. 2003) (quoting *Stacks v. Saunders*, 812 S.W.2d 587 (Tenn. Ct. App. 1990)).  The elements of a fraud claim are essentially the same as those required in an action for fraudulent inducement, *Loew v. Gulf Coast Development, Inc.*, 1991 WL 220576, *7 (Tenn. Ct. App. Nov. 1, 1991), which requires:

(1) a false statement concerning a fact material to the transaction;

(2) knowledge of the statement's falsity or utter disregard for its truth;

(3) intent to induce reliance on the statement;

(4) reliance under circumstances manifesting a reasonable right to rely on the statement;

(5) an injury resulting from the reliance.

*Id*; *see also Lamb v. Megaflight, Inc.*, 26 S.W.2d 627, 630 (Tenn. Ct. App. 2000).  "Like claims for fraud, claims for fraudulent inducement to enter into a contract may involve false statements of past or present facts or false promises made without the present intent to perform."  *Loew*, 1991 WL at *7.  Where a claim for fraudulent inducement rests on false promises made without the present intent to perform, or "promissory fraud," the plaintiff must prove more than a "subsequent failure to keep the promise."  *Id*. (quoting *Farmers & Merchants Bank v. Petty*, 664 S.W.2d 77, 80–81 (Tenn. Ct. App. 1983).  Rather, the plaintiff must prove that the defendant, at the time the promise was made, had no intention to carry it out.  *Loew*, 1991 WL at *7 (citing *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 499 (Tenn. 1978).

Here, the plaintiff has asserted separate claims for promissory fraud and fraudulent

inducement to contract.  However, the fraudulent inducement claimed by the plaintiff rests on

"promissory fraud," because the plaintiff alleges that defendants induced him to enter into the

agreement by making promises to engage in future conduct, despite the fact that the defendant

had no intention of doing so.[13]  *See Mifsud v. Dominion Bank of Middle Tennessee*, 1993 WL

477012, *5 (Tenn. Ct. App. Nov. 17, 1993) ("The fraudulent inducement claimed by plaintiff is

'promissory fraud' in that defendant induced plaintiff to sign the release by promises which

defendant had no intention of keeping.").  Thus, to ultimately succeed on either of his fraud-

based claims, the plaintiff must prove that the defendants had no intention to honor the promise

at the time it was made.

      The defendant contends that the plaintiff's fraud claims should be dismissed because,

apart from the allegation that ICR did not perform under the alleged oral agreement, the plaintiff

has not alleged a single fact from which the court could infer that defendants entered into the

agreement without the present intent to perform.  The plaintiff correctly responds that, pursuant

---

[13]The Amended Complaint, with respect to plaintiff's "fraudulent inducement to contract" claim, states:

> 50.  After September 18, 2003, but before February 26, 2004, International and Amerling intentionally misrepresented to Mr. Kelly via telephone that International would pay him one-half of any commission on fees earned by International for any transaction involving a client procured or brought to International by Mr. Kelly.  This was a false statement concerning a fact material to the parties' Agreement.
>
> . . .
>
> 53.  When it entered into the Agreement, International and Amerling had knowledge of the falsity of their statements agreeing to split commissions with Mr. Kelly or had an utter disregard for the truth of the agreed-upon commission fee structure.

(Docket No. 26)

to Rule 9(b), while the circumstances constituting fraud or mistake must be stated with particularity, "[m]alice, *intent*, knowledge, and other condition [sic] of mind of a person may be averred generally." Fed. R. Civ. P. 9(b) (emphasis added). Here, the plaintiff has clearly alleged in his Complaint that "International and Mr. Amerling had no intention to split the commissions with Mr. Kelly at the time the representations and Agreement were made." (Docket No. 26, ¶ 45). Such general allegations are sufficient to survive a motion to dismiss.[14]

Finally, defendant Amerling contends that, at the very least, the fraud claims asserted against him individually fail as a matter of law because Amerling was not a party to the agreement and, therefore, had no duty to perform. According to Amerling, absent a personal duty to perform, Amerling could not have had a present intent not to carry out his promise personally. Because Amerling has not highlighted– and the court, despite its search, has not independently discovered– any support for the legal argument that a defendant cannot be held liable for promissory fraud unless he has a legal obligation to perform the asserted promise, the court declines to dismiss the fraud actions alleged against Amerling individually.


III.     **CONCLUSION**

For the reasons expressed herein, the Motion to Amend (Docket No. 26) filed by the

---

[14]Furthermore, even if the court were to treat the defendant's motion as one for summary judgment– which the defendant does not urge the court to do– Tennessee courts have generally held that, "where a claim of fraud is presented, ordinarily only upon a full trial of the action can the issue properly be developed. As a general rule, summary judgment is not an appropriate procedure for the disposition of such an issue." *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 499 (Tenn. 1978) (citing *Long v. State Farm Fire & Casualty Co.*, 510 S.W.2d 517, 519 (Tenn. Ct. App.1974)).

plaintiff will be granted, and the Motions to Dismiss or For Judgment on the Pleadings (Docket Nos. 8, 10) filed by defendants ICR and Amerling will be denied.

An appropriate order will enter.

ENTER this day of November 9, 2005.

_____

ALETA A. TRAUGER

United States District Judge